## KORDEWICK et al. v. BROTHERHOOD OF RAILROAD TRAINMEN et al.

No. 9964.

United States Court of Appeals
Seventh Circuit.

May 3, 1950.

C. Ballard Harrison, Hammond, Ind., John H. Gately, Joseph F. Burns, Chicago, Ill., for appellants.

Burke Williamson, Chicago, Ill., Forrest E. Gantenbein, Hammond, Ind., for appellees.

. Before MAJOR, Chief Judge, and KERNER, and DUFFY, Circuit Judges.

DUFFY, Circuit Judge.

The twenty plaintiffs herein, all residents of Illinois, were employed by the Indiana Harbor Belt Railroad as yardmen in its Blue Island, Illinois, yards between August 13, 1926, and December 12, 1938. All the plaintiffs are members of Lodge 531 of the Brotherhood of Railroad Trainmen. In 1919 the Brotherhood of Railroad Trainmen (hereinafter referred to as the "brotherhood"), on behalf of its members, entered into a contract with the General Managers Committee representing the Indiana Harbor Belt Railroad and various other railroads in the Chicago area. Among the provisions in the contract was one calling for a full yard crew consisting of a foreman and two helpers. In 1926 the railroad constructed a "hump operation" in its Blue Island yards, by means of which the railroad sorted and distributed a large num-

ber of cars by the use of gravity and manipulation of switches, rather than by the use of switch engines. The plaintiffs claim that the railroad operated engines in connection with this operation with less than a foreman and two helpers on each engine. The basis of the claim which plaintiffs make as to the loss suffered by them can best be stated by quoting from their brief herein: "They (plaintiffs) assert that the railroad did not abide by its contractual agreement and thus deprived the plaintiffs and others in the class from earning the wages to which they were entitled during that period, either because they were not called to work when they should have been, or because when they were called, they were required to perform more and harder work for a longer period of time than would have been necessary under the contract."

Plaintiffs allege that their claimed grievances were presented through their local lodge of the brotherhood from 1926 to 1933, but that favorable action was not taken. In 1936 the railroad agreed with the brotherhood to place additional helpers and foremen on the engines, but as part of the terms of said agreement the claims for past violations were waived by the brotherhood. Plaintiffs allege they did not have any knowledge of such waiver until 1938. This waiver of plaintiffs' claims was the subject of several appeals within the brotherhood, which resulted in the waiver action being upheld. In June, 1940, the Board of Appeals of the brotherhood suggested that an appeal then pending there be withdrawn, and that the claims be submitted to the General Grievance Committee of the brotherhood for further handling,[1] and this was done. The claims were then filed by the brotherhood with the National Railroad Adjustment Board.[2] On April 3, 1943, the claims were withdrawn from said board by a joint letter of the railroad, the General Grievance Committee of the brotherhood, C. C. Kitts, and B. W. Fern, who had been appointed by President Whitney to act in his place. This action of withdrawal was appealed by members of Lodge 531 of the brotherhood to A. F. Whitney, the president of the brotherhood, who denied the appeal. An appeal was not taken from the action of the president of the brotherhood, although such remedy was available. On August 24, 1945, the plaintiffs herein, by an attorney, presented their claims to the National Railroad Adjustment Board, but the board refused to take jurisdiction because, as the board stated, the claims were not presented by the proper authority.

The plaintiffs herein brought suit against the railroad in the United States District Court for the Northern District of Illinois. The basis of their claims in that suit was that the defendant railroad did not give up to its contractual agreement as to a full yard crew in its Blue Island, Illinois, yards during the period from August 13, 1926, to December 12, 1938. Plaintiffs there, as here, claimed they were prevented from earning the wages to which they were entitled. The district court ruled that plaintiffs' claims were barred by the statute of limitations of the State of Illinois. This court affirmed in Kordewick et al. v. Indiana Harbor Belt R. Co., 7 Cir., 157 F.2d 753. Other claimants, who were residents of Illinois, brought a suit against the railroad in the Northern District of Indiana, based upon similar alleged losses under the same contract. That court dismissed the complaint, holding that recovery was barred by the applicable statute of limitations

---

1. Extracts from the constitution of the brotherhood were attached to the complaint, as Exhibit I. Referring to the General Grievance Committee, General Rule 7 provides in part: "A committee thus constituted shall have the power to alter, amend, add to or strike out * * * any part or all of any complaint or claim submitted to the committee, subject to appeal to the entire general committee and/or Board of Appeals."

2. General Rule 8 provides that the general committee might summon the President of the brotherhood to their assistance, and Rule 9 provides the President may deputize in his place an officer of the grand lodge to confer and act with the General Grievance Committee. The committee summoned President Whitney who appointed B. W. Fern as Deputy President of the brotherhood.

of Indiana. This court affirmed in Albrecht et al. v. Indiana Harbor Belt R. Co., 7 Cir., 178 F.2d 577.

In the case at bar plaintiffs allege that the defendant brotherhood is an unincorporated association, with principal place of business and main office at Cleveland, Ohio. One C. C. Kitts, general chairman of the brotherhood for the Indiana Harbor Belt Railroad Company, and Lodge 962 of the brotherhood are also named as defendants but no relief is asked as to them. Plaintiffs here seek to recover from the brotherhood the amounts of their previously asserted claims against the railroad. Plaintiffs assert this is a class suit, and allege that various officials of the brotherhood, including President A. F. Whitney, were and are guilty of malfeasance, nonfeasance, and misfeasance in their duties as agents of the plaintiffs, and that in withdrawing the cases from the National Railroad Adjustment Board without the knowledge or authority of the plaintiffs they acted in bad faith. Five of the plaintiffs herein demand judgment against the brotherhood for $25,000 each, five demand $20,000 each, and ten demand $15,000 each.

The defendant brotherhood made a motion to dismiss the complaint, asserting several grounds therefor. The district court granted said motion on the ground that plaintiffs' charges of bad faith and misconduct by said officials of the brotherhood in their duties as agents of the plaintiffs do not constitute grounds for relief against all the members of the brotherhood.

■ Plaintiffs argue that the district court was in error in characterizing the brotherhood officials as agents for the plaintiffs, and stoutly insist that such officials were agents only of the brotherhood. As to this issue, there is no dispute as to the facts involved. We think the trial court was correct in its conclusion that the officials were acting as plaintiffs' agents. In fact, the plaintiffs so classified them themselves. Paragraph 22 of the complaint states, "That in and by said actions of the Brotherhood and its duly constituted officials, A. F. Whitney, C. C. Kitts, B. W.

Fern and others, they were and are guilty of gross malfeasance, nonfeasance and misfeasance in their duties *as agents of the plaintiffs herein * * *,"* and further, in Paragraph 25, "That it became and was the duty of the defendant Brotherhood * * * and C. C. Kitts, individually, as a duly constituted official of said Brotherhood * * * *as agents of the plaintiffs * * *."* (Italics added.)

■ In deciding that the complaint did not state a claim upon which relief could be granted, the trial court concluded that plaintiffs, as members of an unincorporated association, were co-principals and jointly responsible for the acts of the agents of the brotherhood. The court then said: "* * That responsibility cannot be avoided or shifted by those of the co-principals who may be affected adversely by the derelictions of their common agent; they are as much responsible for his actions as are their co-principals." The trial court relied on Hromek v. Freie Gemeinde, 238 Wis. 204, 209, 298 N.W. 587, 589, where the court stated the rule to be: "* * * while a principal may sue an agent for dereliction of duty, he may not sue his co-principals for the dereliction of their common agent. * * *" To the same effect is the decision in McClees v. Grand International Brotherhood of Locomotive Engineers, 59 Ohio App. 477, 18 N.E.2d 812, upon which the trial court also relied, where it was held that a member of an unincorporated association could not sue the association for a breach of duty of its officers because these officers were as much the agents of the plaintiff as of the other members of the association.

We think that the rule of law replied on by the district court is sound in all ordinary and usual situations where the members of a union are represented by their officials in negotiations with the employer, and that it was correct to have applied it to the facts in the case at bar. The plaintiffs here voluntarily became members of the brotherhood agreeing to abide by its constitution and by-laws. They specifically agreed that the Grievance Committee should have power to alter, amend, add to or strike out any

part or all of any claim submitted to such committee.

█ It is true that conclusions of bad faith and fraud were stated in the complaint. Nevertheless, certain underlying and controlling facts are without dispute. Plaintiffs' claims against the railroad were withdrawn in 1936 as part of the settlement then made with the railroad. The plaintiffs admit that they knew of the withdrawal of their claims sometime in 1938. They did not attempt to bring suit against the railroad on their claims until after the statutes of limitation in both Illinois and Indiana had barred such claims, so, when in 1943, the Grievance Committee, the Lodge chairman, and the representative of the National President of the brotherhood withdrew claims which had been waived in 1936, we think that as a matter of law it did not constitute fraud and bad faith.

It is obvious that at times the officers of any union must make decisions on matters of policy that will not please 100% of the members. Undoubtedly the new method of switching adopted by the railroad in 1926 presented to the brotherhood a difficult problem of interpreting the earlier contract executed before the hump operation was contemplated. By the settlement made in 1936 the brotherhood obtained an excellent result as to all future operations for each of the plaintiffs and also the 20 others who had like work at the Blue Island yards.

█ Even plaintiffs lacked confidence in their conclusions of fraud and bad faith charged against the brotherhood officials, for in their reply brief herein they seem to rely on a somewhat different proposition. They say, "It may be true that there was no bad faith on the part of the Brotherhood officials, if they sincerely believed that it was their right to sacrifice an individual claim in order to bring about a more favorable agreement." They argue, however, that the individual who possessed the claim has suffered a wrong and that such claimant should have the right of restitution from the brotherhood. In spite of this shifting of ground, we think the district court properly dismissed the complaint.

Plaintiffs lean heavily upon Steele v. Louisville & National Railroad Co. et al., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173, and Tunstall v. Brotherhood of Locomotive Firemen & Enginemen et al., 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187. In the Steele case the plaintiff, a fireman, was a Negro. The brotherhood had entered into a contract with the railroad designed to give the better jobs to firemen who were white, and to otherwise discriminate against those firemen who were of the Negro race. The court pointed out that the right of the brotherhood to represent the plaintiff lodged not in his voluntary action, but wholly in the command of the Railway Labor Act, 45 U.S.C.A. § 151 et seq. The court said, 323 U.S. at page 203, 65 S.Ct. at page 232, 89 L.Ed. 173: "This does not mean that the statutory representative of a craft is barred from making contracts which may have unfavorable effects on some of the members of the craft represented. * * *" The court there held that it was the duty of the bargaining representative of the craft to represent all of the employees without discrimination because of their race. In the Tunstall case, considered a companion case to the Steele case, the plaintiff, a fireman, was a Negro. Again it was a case where the brotherhood and the railroad had entered into a contract which discriminated against firemen who were Negroes. As the plaintiff was not a member of the brotherhood the court held that the plaintiff might present his suit against the railroad and the brotherhood for an injunction restraining the discriminatory practices put into effect by the contract against him and other members of his craft who were Negroes.

We think these cases are clearly distinguishable on the facts involved. No case has been cited to our attention where any court has permitted a suit by a member of the union against the officials of the union and the union itself where the constitution of the union gave wide discretion to the grievance committee in handling claims and grievances of its members.

Judgment affirmed.