FIORITA *v.* McCORKLE ET AL.

[No. 228, September Term, 1959.]

*Decided June 10, 1960.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Robert J. Gerstung,* with whom was *Frederick Steinmann* on the brief, for appellant.

*Bernard M. Savage,* for appellees.

HAMMOND, J., delivered the opinion of the Court.

The suit below was by Fiorita, a discharged employee of the Pennsylvania Railroad Company, against the Brotherhood of Railroad Trainmen, Lodge No. 124, an unincorporated group of which he was a member in good standing, and the

chairman of the grievance committee of the Lodge, McCorkle. The appeal is from a judgment for defendants for costs, Judge Tucker having sustained demurrers to the amended declaration after holding (1) that a member of an unincorporated union cannot sue the group as an entity, and (2) that the declaration did not allege any breach of duty owed Fiorita by McCorkle.

The case was presented below, and comes here on appeal, in a most unsatisfactory posture. The parties stipulated that the constitution of the Brotherhood of Railroad Trainmen "may be referred to or used for any purpose by any of the parties * * *." Whether this was intended to incorporate into the declaration, subject to the demurrers, all parts of the constitution deemed relevant by any party, or to cause the pleadings to be treated as the rough equivalent of a motion for summary judgment by the plaintiff and each defendant, respectively, is not apparent. It is obvious however that if parties intend to seek a decision without trial by amplifying the pleadings, they should in almost every instance, resort to motion for summary judgment and not to demurrer.

The amended declaration alleges that Fiorita was employed as a trainman, that his contract of employment incorporated the terms of an agreement between the railroad and the Brotherhood of Railroad Trainmen, which provided that a trainman should not be suspended or dismissed without a fair and impartial trial, and, if charged "in disciplinary matters" may, if he desires, be represented at his trial by a "duly accredited representative," defined as the Grievance Committee of the local, the chairman thereof, any member thereof designated to act as chairman, or an officer of the Lodge.

The declaration alleges further that on September 7, 1957, Fiorita was "held out of service" on disciplinary charges; that he requested an investigation of the charges; that at investigatory hearings held on September 9 and September 11, M. P. Walsh, vice-chairman of the Grievance Committee, and C. A. Trenor, a fellow Lodge member and co-worker, appeared with Fiorita; that the defendant McCorkle returned from an absence to his position of chairman of the Grievance Committee and Fiorita asked him to act for him as his "duly accredited

representative" and, after a meeting at Fiorita's house "to discuss the case" (Trenor being present), McCorkle agreed to represent Fiorita "in cooperation with Trenor." Then, it is alleged, McCorkle "without justification or explanation" told Fiorita "that if he permitted C. A. Trenor to act as a representative that he, the Plaintiff, would be discharged from the Railroad," and "Further the Defendant unreasonably advised the Plaintiff to admit his guilt to the charges, contrary to the desires and interests of the Plaintiff, and which the Plaintiff refused to do." [1]

The declaration goes on to allege that at the resumed investigatory hearing on October 2, McCorkle, Trenor and a lawyer retained by Fiorita appeared. McCorkle again demanded that he be the exclusive representative of Fiorita, who refused the demand. McCorkle then left the hearing "in the presence of the agent hearing officers of the Railroad, thereby depriving the Plaintiff of a duly accredited representative." [2] It is claimed that McCorkle intended by his de-

---

1. We were told at the argument that McCorkle's advice to plead guilty was given on the theory that Fiorita was guilty and, if he admitted it, would be restored to duty; and that Fiorita considered the advice "unreasonable" because if he was reinstated under such circumstances, he would lose his pay for the time he was out of service, whereas if he won acquittal, he would receive his back pay.

2. General Rule 14 of the constitution of the Brotherhood provides:

"Except in individual cases where the member or members involved serve reasonable written notice on the Brotherhood to the contrary, *each member of the Brotherhood of Railroad Trainmen grants full and complete authority to the said Brotherhood and any and all of its duly constituted representatives to act for him and in his name* for the purpose of collecting, settling, compromising, amending, dismissing, or in any other manner disposing of any and all of his claims, complaints or grievances against his railroad and motor carrier employers, and authorizes the Brotherhood and its representatives to submit such claims, complaints or grievances for determination to any person, board or other tribunal provided by law or otherwise which, to the Brotherhood or its representatives, may be deemed necessary or advisable, and *the Brotherhood and its representatives shall have full and complete authority to receive* notice of hearings, if any, or to waive hearing, and *to appear for, repre-*

mand for exclusive representation to publicize hostility "to the Plaintiff and his remaining representatives," that his refusal to represent Fiorita was a breach of duty owed by him and the Lodge, deprived him of a fair and impartial trial and amounted to a malicious interference with Fiorita's employment rights.

It is alleged that as a result of the matters complained of, Fiorita was brought to trial before the Railroad and caused to appeal to the National Railroad Adjustment Board "without the support and assistance of the Defendant Lodge No. 124 and with the overt hostility of the Defendants to the Plaintiff and his representative, C. A. Trenor, the Plaintiff was discharged from his employment with the Railroad."

The courts have differed as to whether a member in good standing of an unincorporated union can sue the union for breach of a duty owed him in connection with his employment relations or status. The greater number of decisions have held that he cannot on the theory that an unincorporated group is not a separate legal entity in the eyes of the law, having no existence apart from that of its individual members, (at common law it could neither sue nor be sued) and the plaintiff and every other member of the group are co-principals in a joint enterprise. Therefore, as a principal, a member has no cause of action or standing to sue his co-principals for the wrongful act of their common agent. The cases adopting this view point out that statutes such as that of Maryland, (found in Code (1957), Art. 23, Sec. 138: "Every unincorporated association or joint stock company having a recognized group name may sue or be sued in such group name in any action affecting the common property, rights and liabilities of such association or joint stock company"), are procedural provisions which do not in any way change the legal status of the group or its substantive rights and liabilities or create new causes of action. See *Marchitto v. Central Railroad Co. of New Jersey* (N. J.), 88 A. 2d 851; *De Villars v. Hessler* (Pa.), 70 A. 2d 333; 14 A. L. R. 2d 470; *McClees*

---

sent and act for its members before such person, board or other tribunal in connection with the consideration and determination of such claims, complaints or grievances; * * *." (Emphasis supplied.)

There is no suggestion that these provisions are not applicable.

*v. Grand International Brotherhood of Locomotive Engineers* (Ohio), 18 N. E. 2d 812; *Storms v. United Grain & Millworkers' Union* (Ohio App.), 27 N. E. 2d 781; *Kordewick v. Brotherhood of Railroad Trainmen* (7th Cir.), 181 F. 2d 963; *Huth v. Humboldt Stamm, No. 153* (Conn.), 23 A. 1084.

The cases that have taken the opposite view reason that an essential element of the majority theory is that the act or omission complained of must be one which reasonably can be considered as done or omitted on behalf of the injured members, and therefore to say that an agent who wilfully or negligently violates a duty to his principal acts on behalf of that principal is an unwarranted extension of the agency concept, which is out of keeping with reality. These cases have refused to apply the doctrine of imputation to an injured member of the union when the wrongful act was committed in the course of an undertaking which was strictly adverse to the member's interests. See *Fray v. Amalgamated Meat Cutters, etc.* (Wis.), 101 N. W. 2d 782; *United Association of Journeymen, Etc. v. Borden* (Tex.), 328 S. W. 2d 739; *Taxicab Drivers' Local Union No. 889 v. Pittman* (Okla.), 322 P. 2d 159; see also Title 1, Sec. 101 (a) (4), Labor-Management Reporting and Disclosure Act of 1959, 29 U. S. C. A., Sec. 411 (a) (4), providing that no labor organization (in industry affecting interstate commerce) shall limit the ultimate right of a member to sue; *Bonsor v. Musicians' Union* (Eng.) [1956] A. C. 104; *Glover v. Brotherhood of Railway and Steamship Clerks* (N. C.), 108 S. E. 2d 78; and compare *Jenkins v. Wm. Schluderberg-T. J. Kurdle Co.*, 217 Md. 556.

We see no present need to decide which of the conflicting views is the sounder. We shall assume, without deciding, that a member of an unincorporated union can sue the union for negligently or wilfully failing to represent him either properly or at all in his employment relations or status, because we find that the declaration in the case before us fails to state a cause of action against either McCorkle or the Lodge. The declaration is composed of over twenty-five hundred words, many of them characterizations like "unreasonable" and "hostility" and "unjustifiably" and "maliciously"

but, when analyzed, it alleges no more than that McCorkle after first agreeing to act with Trenor, reconsidered (by almost inevitable inference, after learning the facts), and insisted upon the right the Lodge had to act as exclusive representative of Fiorita or not to act for him at all, and advised him to admit his guilt. The allegations that this advice was "unreasonable" and that the refusal of McCorkle to act for Fiorita in conjunction with Trenor and Fiorita's lawyer was evidence of "hostility" to Fiorita and his representatives are conclusions, not allegations of fact.[3]

Neither McCorkle nor the Lodge was obligated to act for Fiorita except exclusively under General Rule 14 of the Brotherhood's constitution, and neither had to press a claim in his behalf that was believed unfounded or untenable. That McCorkle's advice to plead guilty may have been sound would seem supported by the fact of the National Railroad Adjustment Board's upholding of his discharge. It is to be noted that Fiorita never sought to appeal to the Lodge from McCorkle's withdrawal from the investigatory hearing of October 2, or sought another accredited representative; nor did he seek the Lodge's support or representation in his actual trial which followed.[4] Fiorita did not seek a further post-

---

3. In *Donato v. American Locomotive Co.*, 111 N. Y. S. 2d 434, an action against the employees' union and employer for wrongful discharge, the Court said of the declaration: "Words like 'conspiracy' or 'plan' or 'fraudulent' are not actionable in themselves when stated in a pleading. They do not breathe fresh vigor into a morbid complaint unless facts are also pleaded to show that the pleader is hurt in some legal sense." In *Fray v. Amalgamated Meat Cutters, Etc.* (Wis.), 101 N. W. 2d 782, 787, the Court held: "The complaint does allege the discharge was unlawful but does not state the facts making it so. The allegation is more of a conclusion of law than a fact. The complaint alleges the union's failure to act caused the loss of plaintiff's rights. But in this context such an allegation of causation without the facts as to the agreements which were in force is a conclusion of law. See also *Zdero v. Briggs Mfg. Co.* (Mich.), 61 N. W. 2d 615.

4. General Rule 6 of the Brotherhood's constitution grants to a member "believing that an injustice has been done him by his lodge accepting, or rejecting a grievance which has been submitted by himself or other member of the lodge, may appeal from such action to the President of the Brotherhood in the following man-

ponement of the investigatory hearing of October 2; he elected to proceed without McCorkle and also elected to go to trial without seeking union representation.

The essence of Fiorita's grievance is that he went through a hearing, a trial and an appeal without union support. Union support is not essential to a successful assertion of rights by an employee against an employer (*Jenkins v. Wm. Schluderberg-T. J. Kurdle Co.,* 217 Md. 556, *supra; Food Fair Stores, Inc. v. Raynor,* 220 Md. 501; *Elgin, Joliet & Eastern Railway Co. v. Burley,* 325 U. S. 711, 89 L. Ed. 1886), and the prospect of successful employee recovery is an undoubted deterrent to improper employer action.

Passing the fact that Fiorita does not allege that his being held out of service or his discharge was unjustified, or that the result would have been different if the Lodge had represented him, we think there were no sufficient allegations of fact that McCorkle and the Lodge were not justified in acting as they did. A union has a wide discretion, if fairly exercised, in determining whether to go forward, and how far, in regard to a member's employment status. *Jenkins v. Schluderberg-T. J. Kurdle Co., supra,* at page 564 of 217 Md.; *Fray v. Amalgamated Meat Cutters, Etc., supra,* at page 787 of 101 N. W. 2d; *Ostrofsky v. United Steel Workers of America* (D. Md.), 171 F. Supp. 782; *Kordewick v. Brotherhood of Railroad Trainmen* (7th Cir.), 181 F. 2d 963; 44 Va. L. Rev. 1337, 1338.[5]

---

ner: * * *." General Rule 14, which grants to the Brotherhood (acting through the Lodge) complete authority to act for a member and dispose of his case, concludes as follows: "Provided, that any adverse action by the Brotherhood or its representatives on any such claim, complaint or grievance shall be subject to the appropriate right of appeal under the terms and limitations of this constitution."

5. We said in *Jenkins*: "* * * the Union is to consider carefully and fairly the alleged grievances of its members, that it is likewise to exercise its judgment and discretion fairly on behalf of its individual members in determining upon what terms it believes any grievance of theirs should be adjusted and whether such grievances should be carried to arbitration, if negotiations for settlement or adjustment fail." (p. 564)

The Wisconsin Court said in *Fray:* "However, we do not mean

Judge Tucker put it succinctly in this fashion:

"It is alleged that McCorkle advised the plaintiff that if he permitted Trenor to represent him he would be discharged by the railroad company, and that McCorkle 'unreasonably advised the plaintiff to admit his guilt to the charges.' There was certainly no legal or moral obligation of McCorkle to advocate in behalf of the plaintiff something that he believed to be untruthful or wrong; and if McCorkle did not believe the plaintiff was right in the matter in controversy, it was probably better for the plaintiff for McCorkle to have nothing to do with it.

"The amended declaration does not show any breach by McCorkle of any contract with or legal duty to the plaintiff.

"* * * If the railroad company refused a fair and impartial trial to the plaintiff or refused to permit him to have the Grievance Committee or its Chairman to represent him, he may have a right of action against the company; but not against anyone not a party to the contract. Also, if the plaintiff was discharged wrongfully by the railroad company, and had unsuccessfully concluded his procedural rights under his or the union's contract with the company, or was improperly prevented from doing so, he would have a right of action against the company.

---

to say every disgruntled union member has a cause of action against his union for the manner in which it represented or failed to represent his interest. Many union constitutions and bylaws contain provisions for the internal regulation and settlement of disputes between the members and the union which must be exhausted as a condition precedent to bring a suit. The union has great discretion in processing the claims of its members, and only in extreme cases of abuse of discretion will courts interfere with the union's decision not to present an employee's grievance. See 44 Virginia Law Review (Nov. 8, 1958), 1337, 1338. In certain cases for the greater good of the members as a whole, some individual rights may have to be compromised. Whether or not a cause of action is stated depends upon the particular facts of each case."

"There is no allegation of fact constituting a conspiracy, *i.e.,* an agreement between McCorkle and another to do an unlawful act by lawful means or a lawful act by unlawful means. Neither do the allegations amount to an actionable interference with contractual relations.

\* \* \*

"Also, if McCorkle did no actionable wrong to the plaintiff, neither did the Brotherhood."

We agree.

*Judgment affirmed, with costs.*