MEOLA *v.* BETHLEHEM STEEL COMPANY, ET AL.

[No. 243, September Term, 1966.]

228

*Decided April 6, 1967.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, OPPENHEIMER, McWILLIAMS and FINAN, JJ.

*Charles Philip Brown* for appellant.

*Bernard W. Rubenstein,* with whom was *Jacob J. Edelman* on the brief for Industrial Union of Marine and Shipbuilding Workers of America, et al., part of appellees; *Benjamin R. Civiletti,* with whom were *H. Vernon Eney* and *Venable, Baetjer & Howard* on the brief, for Bethlehem Steel Company, other appellee.

OPPENHEIMER, J., delivered the opinion of the Court.

Angelo P. Meola filed suit in the Court of Common Pleas of Baltimore City against Bethlehem Steel Company (Bethlehem), the International Union of Marine and Shipbuilding Workers of America and its Local Number 24 (the two unions are hereafter referred to collectively as "the Unions" and separately as the International Union and Local 24). In his amended declaration, with which was filed an election of jury trial, Meola asserted, as his cause of action against Bethlehem, that after he was furloughed from his employment as a second class shipfitter on or about July 22, 1959, Bethlehem arbitrarily, capriciously and maliciously refused to call him back to work as was required under the collective bargaining "agreements" between Bethlehem and the International Union. Two causes of action are asserted against the Unions; first that they breached their duty of fair representation to Meola by arbitrarily, capriciously and maliciously refusing to process his grievance against Bethlehem, and second, that the Unions breached their duty of fair representation to Meola by arbitrarily, capriciously and maliciously depriving him of his right to have his grievance submitted to arbitration. The relief prayed was Meola's reinstatement in his job classification with full seniority rights and back pay, and punitive and compensatory damages against Bethlehem and the Unions.

After answers denying liability, the defendant-appellees filed motions for summary judgments, on the ground that there was no dispute as to a material fact and that they were respectively entitled to judgments as a matter of law. In support of its motion, Bethlehem filed an affidavit of J. S. Fleishell, Management's Representative in the Industrial Relations Department of Bethlehem located on Key Highway, in Baltimore. The Unions, in support of their motion, filed an affidavit of Edwin Vinson, who has been Shop Steward of the Shipfitting Department at Bethlehem's Key Highway shipfitting yard since 1947, and president of Local 24 from July, 1957 to July, 1961. The Unions also filed as an appendix to Vinson's affidavit a report of Dr. H. Alvan Jones, whose role in the controversy will be referred to hereafter.

In their affidavits, Fleishell and Vinson swore to the following facts: During the period covered by the Amended Decla-

ration the International Union had successively entered into two Collective Bargaining Agreements with Bethlehem covering the shipbuilding employees in Baltimore, and between the periods covered by these two Agreements Bethlehem had introduced a "Company's Proposal for a New Agreement." The first Collective Bargaining Agreement was dated November 3, 1956, and was in effect until July 31, 1959. Between July 31, 1959 and June 23, 1960 there was no Collective Bargaining Agreement in force between the Unions and Bethlehem. However, on August 11, 1959, Bethlehem put into effect the terms of its Company's Proposal. A new Collective Bargaining Agreement was entered into between Bethlehem and the International Union, effective June 23, 1960. Both Collective Bargaining Agreements and the Company's Proposal contain a binding three-step procedure for the adjustment of grievances of employees in Article XIX of each respective document. The provisions of each Article XIX are substantially the same, and Section 1 thereof provides for consultations and hearings in each of the said three steps and further provides that unless an appeal is taken to a subsequent step "* * * such grievance shall be deemed to be settled * * *" in accordance with the disposition at the previous step. Articles XIX, Sections 2 provide in substance that grievances not satisfactorily settled in the three-step procedure may be submitted to arbitration by either party.

Meola was first employed by Bethlehem at its Key Highway Yard on July 22, 1952, in the capacity of a shipfitter. He voluntarily terminated this employment two weeks later on August 5, 1952. On February 24, 1955, Meola was again employed by Bethlehem as a shipfitter, and from this date until laid off on July 30, 1959, due to lack of work (his last day of work being July 22, 1959), Meola was employed as a shipfitter either at Bethlehem's Key Highway Yard or Sparrows Point Yard with periodic layoffs and absences from work due to lack of work or physical injuries.

Meola had sustained industrial accidents to his back in 1950 and 1952, prior to his employment by Bethlehem. While employed by Bethlehem from February 24, 1955 to July 22, 1959, Meola had a series of industrial accidents which caused him to be absent from work for extended periods of time.

On the evening of September 12, 1959, Meola informed Vinson that he had not been permitted to return to work, but had first to be examined by Dr. Bociek. Vinson immediately spoke to Ellerman, foreman of the shipfitting department. Ellerman informed Vinson that the matter should be taken up with the Bethlehem Industrial Relations Department. Shortly thereafter, Joseph Munley, the Executive Secretary of Local 24, and Vinson met with Fleishell concerning certain matters, among which was the question of Meola's not being returned to work on September 11, 1959. Fleishell informed them that Meola had been injured in early 1959, that in the opinion of the Company he was physically unable to work and that the Company would not permit him to work without a doctor's certificate stating that he could perform his normal duties. Munley and Vinson arranged with Fleishell for Meola to be examined by Dr. Bociek or to be allowed to go to a doctor of his own choosing and so advised Meola. They asked Meola to obtain a doctor's certificate that he could perform his normal duties.

Meola did not return to the Bethlehem Yard on the date of September 15, 1959, for examination by Dr. Bociek, nor was Bethlehem advised that Meola had been examined by any private doctor at or about that time.

Despite the fact that the 1956 Agreement had expired, Vinson filed a grievance on behalf of Meola on October 2, 1959. The grievance read:

> "The Union charges the Company with violating the applicable provisions of the Agreement by refusing to put 34-621, Angelo Meola, to work on Monday, September 14, 1959.
>
> "The Union requests the Company to pay Mr. Meola for all hours lost to him by the unjust action on the part of the Company effective 30 days prior to the filing date of this grievance."

On October 9, 1959, the Bethlehem foreman to whom the matter had been referred denied the grievance on the ground that the Agreement of November 3, 1956, was no longer applicable and that the grievance was not presented in accordance with Article XIX of the Company's Proposal and thus the grievance

was improperly in the grievance procedure. On October 13, 1959, the grievance was appealed to Step No. 2 of the grievance procedure. On October 29, 1959, in a letter from Bethlehem's management representative in the Baltimore Yard to Joseph Munley, Chairman of the Grievance Committee of Local 24, the Union was informed that Meola's grievance was deemed settled inasmuch as the Grievance Committee of the Unions had not pressed the appeal by appearing at the Step No. 2 meeting of Wednesday, October 21, 1959, and inasmuch as the Unions had not submitted their position in writing with respect to the grievance within five days after the hearing meeting.

On Saturday, November 11, 1959, Meola was given permission to bring his case before the Executive Board of Local 24. He was given full opportunity to present his work record and to argue for the processing of his grievance at that time. Meola was again advised to obtain a doctor's certificate certifying his ability to perform his normal shipfitter's work. The record in the case reflects that Meola did not obtain any such physical examination at that time. No appeal was taken to Step No. 3 of the grievance procedure by the Unions or by Meola.

On January 29, 1960, the employees of Bethlehem went on strike, and the strike was not settled until June 23, 1960, at which time a new Collective Bargaining Agreement was signed between the International Union and Bethlehem, and employees were called back to work in order of their seniority. This recall lasted until the end of 1960. During this period Meola had other employment, and, while employed by the Hake Rigging Company, Meola again injured his back in an industrial accident on October 2, 1960, and filed a claim for further disability with the Workmen's Compensation Commission. The claim was compromised on January 13, 1961, for the amount of $1,750. In March of 1961 Meola again went to Local 24 and demanded that his prior grievance be processed. He was again informed by Vinson and Munley that he should go to a doctor. Both men were aware of his recent injury while employed by the Hake Rigging Company. Meola advised them that he could not afford to go to a doctor at that time, and the Union officials agreed that Local 24 would pay for an examination.

On May 3, 1961, pursuant to an appointment made by the Unions' office, Meola was examined by Dr. Jones and written reports submitted to Local 24. Dr. Jones' report states in part:

"There is no doubt as to why this man, by way of history, over the past ten or eleven years, has had repeated occurrences of temporary disablement because of his back, and both current physical examination and x-ray examination of his lumbar spine have revealed functional impairment due to a so-called degenerative disc arthrosis of the lower lumbar spine * * * In fact, with the type of back that this man has, I do not believe that he is physically able to continuously carry on with any so-called strenuous, or laboring type of occupation.

"Because of all that has been discussed above, as to rating of this man's back disability, in my opinion it lies within the category of 35-40%, and will be permanent."

The Unions took no further steps with regard to processing Meola's claim for grievance.

By letter to Bethlehem dated August 3, 1961, Meola, through his attorney, demanded that he be returned to work. Bethlehem gave careful consideration to whether the Appellant was able to perform his work as a shipfitter and determined that based on the medical evidence, the findings of the Workmen's Compensation Commission and his work history, Meola could not perform the duties of a shipfitter. Bethlehem informed Meola that he could not be returned to work because of his disabilities.

Because of the posture in which this case comes before us, we set forth in full Meola's affidavit filed in support of his opposition to the granting of the defendant-appellees' motions for summary judgment. Meola made oath as follows:

"That the Plaintiff was and is an employee of the Bethlehem Steel Company and that on or about July 22, 1959 he was laid off due to lack of work; subsequently the Defendant, Bethlehem Steel Company, rehired other employees with less seniority rights than

the Plaintiff which was contrary to the agreement between the Defendant, Bethlehem Steel Company and the Defendant Unions, specifically as set forth in Article 13, Section 1, Sub-section 2 of said agreement; that the Plaintiff continuously requested the Defendant Unions to proceed in his behalf to have him rehired by the Bethlehem Steel Company in accordance with the agreement between the Defendant Unions and Bethlehem Steel Company, and in accordance with the Plaintiff's rights of membership in said Unions. That even though the said Defendant Unions continuously agreed and promised that they would proceed with the necessary procedures to enable the Plaintiff to be rehired, the said Defendant Unions failed and refused to proceed fully with the procedures for the protection of the Plaintiff's rights which it was the duty of the Defendant Unions to do. That the Plaintiff filed his grievance as provided for in Article 19 of the aforesaid agreement between the Bethlehem Steel Company and the Unions and even though the Unions were duty bound to protect the rights of the Plaintiff, the said Unions have arbitrarily failed to protect his rights in violation of said agreement, and in violation of the Plaintiff's rights as a member in good standing in the said Unions. That the arbitrary refusal of the Defendant Unions was a breach of their contractual duty to the Plaintiff. At the time that the Plaintiff requested the Defendant Unions to proceed with the necessary procedure to have him rehired he was physically able to perform his work. As a result of the above stated facts the Plaintiff was caused to sustain damages."

The court below held that, in view of the affidavits, there were no facts from which a court or jury could infer liability on the part of any of the defendant-appellees and granted their motions for summary judgments.

The legal principles in Maryland pertaining to an action of this kind are established. *Jenkins v. Wm. Schluderberg-Kurdle Co.,* 217 Md. 556, 144 A. 2d 88 (1958) ; *Fiorita v. McCorkle,*

222 Md. 524, 161 A. 2d 456 (1960); *Henthorn v. Western Md. Ry. Co.*, 226 Md. 499, 174 A. 2d 175 (1961). See Bernstein, *Suits by Employees against their Employers under a Labor Agreement*, 65 Transactions Md. State Bar Ass'n 201 (1960). Generally, under the usual grievance procedure of a collective bargaining agreement, the employer is entitled to immunity from suit by individual employees if the grievance procedure is properly followed, but the employee is not barred from redress through litigation for allegedly wrongful discharge or failure to rehire if the union's refusal to carry the employee's case through the various steps of the grievance procedure is unfair, arbitrary or discriminatory. A union has wide discretion, if fairly exercised, in determining whether to go forward through the various steps of the grievance procedure in regard to a member's employment status. In *Vaca v. Sipes*, 386 U. S. 171 (1967), the Supreme Court held, as a matter of federal law, that, even though the employee's grievance may be meritorious, the union's duty of fair representation of a member is breached only when the union's conduct is arbitrary, discriminatory, or in bad faith.

*Jenkins* (which was referred to the Supreme Court in *Vaca*) was decided on demurrer to the employee's declaration against her employer. After a thorough discussion of the considerations involved and the law applicable thereto by Chief Judge Brune, for the Court, the judgment of the lower court sustaining the employer's demurrer was reversed because, on the facts alleged and admitted by the demurrer, the union acted arbitrarily and in a discriminatory manner in refusing to pass the employee's grievance to arbitration under the agreement. The case was remanded, with the suggestion that, on remand, the union would be a proper party to the suit.[1]

---

1. On remand, the company brought in the union as a third party defendant. At the conclusion of the testimony, the union's motion for a directed verdict was granted insofar as the motion went to the company's suit against it for reimbursement or contribution in the event the plaintiff secured a verdict for damages, against the company, but was denied as to possible future proceedings under the plaintiff's prayer for a writ of mandamus for reinstatement. The jury was unable to agree on the issue submitted to it as to whether the union acted in an unfair, arbitrary or discrimi-

*Fiorita* was a suit by a discharged employee of the Pennsylvania Railroad Company against a lodge of the Brotherhood of Railroad Trainmen. The lower court sustained demurrers to the amended declaration. Judge Hammond (now Chief Judge), for the Court, remarked that the case was presented below and came up on appeal in a most unsatisfactory posture, because the parties had stipulated that the constitution of the Brotherhood could be referred to and used for any purpose by any of the parties, and thereby sought a decision without trial, without resorting to a motion for summary judgment. Nevertheless, the judgment was affirmed, because, *inter alia,* there were no sufficient allegations that the Lodge and McCorkle, the chairman of its grievance committee, were unjustified in acting as they did in advising Fiorita to admit his guilt on disciplinary charges. The allegations that the advice was unreasonable and the result of hostility to Fiorita and his representatives were held to be conclusions, not allegations of fact.

In *Vaca,* Owens filed suit against officers and representatives of the National Brotherhood of Packinghouse Workers in the Circuit Court of Jackson County, Missouri. Owens, a union member, alleged he had been discharged from his employment at Swift & Company's Kansas City meat packing plant in violation of the collective bargaining agreement then in force between Swift and the union, and that the union had "arbitrarily, capriciously and without just or reasonable reason or cause" refused to take his grievance through the fifth step of the agreement's grievance procedures. A jury awarded Owens compensatory and punitive damages. The trial judge set aside the verdict and the Kansas City Court of Appeals affirmed, but the Supreme Court of Missouri reversed and directed reinstatement of the jury's verdict. The Supreme Court of the United

natory manner. Judgment n.o.v. was thereupon entered for both the company and the union on the ground no probative evidence had been submitted that the union had acted improperly. Superior Court of Baltimore City 969/47551 (1960). No appeal was taken from that decision. For a discussion of these proceedings, see Bernstein, Suits by Employees against their Employers under a Labor Agreement, 65 Transactions Md. State Bar Ass'n, 201, 207-09 (1960).

States reversed the Missouri Court's judgment. The Supreme Court held that the National Labor Relations Board did not have exclusive jurisdiction, and that Owens failed to prove that the union breached its duty of fair representation in its handling of Owens' grievance.[2]

The facts in *Vaca* are strikingly similar to those in the present case. Mr. Justice White summarized them for the Court as follows:

> "In mid-1959, Owens, a long-time high blood pressure patient, became sick and entered a hospital on sick leave from his employment with Swift. After a long rest during which his weight and blood pressure were reduced, Owens was certified by his family physician as fit to resume his heavy work in the packing plant. However, Swift's company doctor examined Owens upon his return and concluded that his blood pressure was too high to permit reinstatement. After securing a second authorization from another outside doctor, Owens returned to the plant, and a nurse permitted him to resume work on January 6, 1960. However, on January 8, when the doctor discovered Owens' return, he was permanently discharged on the ground of poor health.
>
> "Armed with his medical evidence of fitness, Owens then sought the Union's help in securing reinstatement, and a grievance was filed with Swift on his behalf. By mid-November 1960, the grievance had been processed through the third and into the fourth step of the grievance procedure established by the collective bargaining agreement. Swift adhered to its position that Owens' poor health justified his discharge, rejecting numerous medical reports of reduced blood pressure proffered by Owens and by the Union. Swift claimed that these reports were not based upon sufficiently thorough medical tests.

2. Mr. Justice Fortas, Chief Justice Warren and Mr. Justice Harlan concurred in the result, on the ground that the employee's complaint was subject to the exclusive jurisdiction of the N.L.R.B. Mr. Justice Black dissented.

"On February 6, 1961, the Union sent Owens to a new doctor at Union expense 'to see if we could get some better medical evidence so that we could go to arbitration with his case.' This examination did not support Owens' position. When the Union received the report, its executive board voted not to take the Owens grievance to arbitration because of insufficient medical evidence. Union officers suggested to Owens that he accept Swift's offer of referral to a rehabilitation center, and the grievance was suspended for that purpose. Owens rejected this alternative and demanded that the Union take his grievance to arbitration, but the Union refused. With his contractual remedies thus stalled at the fourth step, Owens brought this suit. The grievance was finally dismissed by the Union and Swift shortly before trial began in June 1964."

The Court's holding was:

"Having concluded that the individual employee has no absolute right to have his grievance arbitrated under the collective bargaining agreement at issue, and that a breach of the duty of fair representation is not established merely by proof that the underlying grievance was meritorious, we must conclude that that duty was not breached here."

In the case before us, the undisputed facts evidence even more strongly than did the facts in *Vaca* that there was no unfair, arbitrary or discriminatory action on the part of the union. In *Vaca*, Owens secured medical evidence of his physical fitness to work; here, Meola never reported for the physical examination which, he admits, Bethlehem had the right to require, and never obtained a physician's report which was contrary to the evidence of his disabilities. Local 24 had him examined by Dr. Jones at the Union's expense, and Dr. Jones' report that Meola was not able physically to carry on any strenuous or laboring type of occupation, and the other uncontradicted facts, justified the Unions in not further pressing Meola's case in the grievance procedure.

Unlike the situation in *Jenkins,* neither Bethlehem nor the Unions, by their pleadings, have admitted Meola's allegations that the Unions acted arbitrarily and unfairly in refusing to press his complaint through all the steps of the grievance procedure. On the contrary, by a full use of the procedure of motions for summary judgment (which, while perhaps not generally the best method of reaching the factual merits of a labor dispute, in this case fairly substituted for a formal trial) Bethlehem and the Unions have affirmatively and convincingly shown that the charges of unfairness, arbitrariness and discrimination on the part of the Unions are in fact baseless. As in *Fiorita,* these charges in the declaration are shown to be mere conclusions of law, and, in this case, to be contrary to the facts.

The facts set forth in the affidavits not only show that, as a matter of law, Meola had no valid claim against the Unions; they also show that his suit against Bethlehem is without foundation. Meola's claim against Bethlehem arises out of the collective bargaining agreements and the grievance procedure which governed the processing of employee complaints. Under the law, Meola cannot challenge the result of his contractual remedy unless he can show that the Unions were unfair or arbitrary in their representation of him, and this he has not done. Moreover, in addition to and apart from this bar, we find that the facts set forth in the affidavits show that Bethlehem's refusal to call Meola back to work was justified. The undisputed facts of Meola's industrial accidents and Dr. Jones' report conclusively show that Bethlehem's decision that Meola was unfit to work at his usual occupation was made with sound cause and was a reasonable exercise of its discretion.

Meola argues that, in the present position of the case, there are several disputes as to material facts and therefore the motions for summary judgments were improperly granted. Maryland Rule 610 provides for summary judgment only when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. *Keyworth v. Industrial Sales Co.,* 241 Md. 453, 456, 217 A. 2d 253 (1966), and cases therein cited. However, in order to prevent the granting of the motion, the party objecting must show more than that there was a question of fact presented; he must also show that the

resolution of the question will in some manner affect the outcome of the case. *Parklawn, Inc. v. Nee*, 243 Md. 249, 254, 220 A. 2d 563 (1966). A mere general denial of a contention is not enough to show that there is a genuine dispute as to a material fact. *Alamo Trailer Sales, Inc. v. Howard County Metropolitan Comm'n*, 243 Md. 666, 671, 222 A. 2d 181 (1966) ; *Frush v. Brooks*, 204 Md. 315, 320-24, 104 A. 2d 624 (1954).

Meola contends that his layoff occurred while he was covered by the provisions of a collective bargaining agreement which terminated on July 31, 1959, and that his grievance was decided under the rules set forth in the "Company's Proposal for a New Agreement" which was later declared null and void by the N.L.R.B. and in *N.L.R.B. v. Bethlehem Steel Co.*, 320 F. 2d 615 (3d Cir. 1963). He argues that therefore the grievance was still pending because Bethlehem's action in disallowing the grievance was illegal. No such contention is made in Meola's amended declaration or affidavit; on the contrary, in both documents, his complaint is that he requested the Unions to take up his complaint and that the Unions did not represent him properly under the existing grievance procedure. The affidavits of the appellees show that the grievance procedure was the same under the collective bargaining agreements and Bethlehem's proposal, and that the Unions fairly represented Meola in accordance with that procedure. The legal status of the Proposal did not affect Meola's standing as a member of Local 24 and the Unions, in good faith, represented him in accordance with the grievance procedure actually in effect. Meola's contention, if true, would give him no cause of action.

Meola's second contention is that Bethlehem did not comply with the provisions of Article XIV, Section 2 of the collective bargaining agreement when it refused to rehire him. That section provides that: "In order to determine the physical fitness of Employees for work, the Company may require such Employees to be examined at such times as it shall deem advisable in the interest of the health and safety of themselves and their fellow Employees by a physician employed by the Company * * * ". In his opposing affidavit, Meola admits that Bethlehem had the right to require him to be physically examined

before being returned to work and that Bethlehem, in fact, requested him to report to and be examined by Dr. Bociek on September 15. The appellees' affidavits show, without contradiction, that Meola never reported for the examination. Meola's argument that Bethlehem's decision not to rehire him was based solely on a decision of an administrative body and not as provided by Article XIV, Section 2 has no merit. After the Unions, in good faith, determined not to proceed further with Meola's claim, Bethlehem's refusal to recall Meola to work was amply supported by the undisputed facts, and was expressly authorized by the section of the agreement which Meola himself invokes.

Another alleged dispute of a material fact adduced by the appellant is that Bethlehem, by its company representative, promised Meola less strenuous work and that he has never been offered such work. In his amended declaration, Meola asked that he be reinstated in his job classification as a second-class shipfitter with full seniority rights and back pay. He did not allege in the declaration nor in his opposing affidavit that he is qualified for any other employment or that there was other work available which he could perform and was willing to accept. The only statement in the record as to any promise of Bethlehem to recall him to work is contained in Fleishell's affidavit that Meola had been told he would be "recalled when there was work available which he could perform." That statement was made before Meola's further injury to his back in October, 1960 and before Dr. Jones' report as to Meola's permanent disability in May, 1961. In the light of these subsequent developments, and of the Unions' refusal to proceed further in the grievance procedure, Bethlehem was clearly justified in determining that there was no work available which Meola could perform.

Meola argues that he is, in fact, able to do heavy work, but, under the authorities, that argument, even if it were supported by the record, does not give him a cause of action against Bethlehem or the Unions, when, as here, there is nothing to show that the Unions acted unfairly or arbitrarily in any way, where, in the absence of any such unfairness, Bethlehem is protected from suit by the employee because of the grievance procedure provided, and where it is clear, in any event, that Bethlehem had ample cause to support its action.

242

We find that there is no dispute as to any material fact and that under the applicable legal principles the appellees were entitled to the summary judgments for which they asked.

*Judgments affirmed; costs to be paid by appellant.*