STORMS, APPELLEE, *v.* THE UNITED GRAIN & MILL-WORKERS' UNION, APPELLANT.

(Decided March 11, 1940.)

*Mr. John W. Cowell* and *Mr. E. L. Baird,* for appellee.

*Mr. David Howe,* for appellant.

MATTHEWS, J. The plaintiff recovered a judgment against "The United Grain and Millworkers' Union, No. 19,634, an unincorporated organization," for $2,750, as damages which he alleged resulted from the breach of a contract relating to seniority rights of employment. In his petition he alleged that the members of the defendant association were too numerous for all of them to be brought before the court, and that the other defendants were officers and trustees of the association and that he joined them as defendants to represent the association.

For cause of action against the association he alleged he was employed by The Ubiko Milling Company as a night watchman from June, 1934, to June, 1937, and that in June, 1937, he was transferred to a position as millhand; that prior to his employment as a millhand the officers of the defendant association agreed with him that if he would join the union, his seniority rights as a millhand would date from the time he started his employment with The Ubiko Milling Company; that after he joined the union, the union failed to perform its agreement, but, on the contrary, changed his seniority rating so that it would be based on the time he became a millhand instead of the time when he commenced to work as a night watchman, and that by reason thereof and upon the insistence of the union, his employer discontinued his employment and he was damaged by loss of wages.

The constitution and by-laws of the defendant association were not introduced in evidence. We, therefore, know nothing of the seniority provision, if any, therein; and there is no evidence on the subject of seniority rights other than that the employer agreed to employ only members of the association and that they should be employed and reemployed in the event of temporary discontinuance of employment in accordance with a seniority list prepared annually by the association and published thirty days before it became operative in order to give any member, who felt aggrieved by his rating, time to protest to the association and endeavor to have it changed, and that "Employee's seniority will date from last time of entering service unless otherwise agreed to"; but it was also provided in the agreement with the employer that an employee could not claim his seniority rating unless he filed his name and address with the representative of the union.

This agreement was between the employer and the millworkers' association, which included all those working in the mill. All the millworkers joined when the union was organized. To determine their seniority rating it was necessary to adopt some basis other than the time they started to work as union members, because on that basis they would all have the same rating. This provision was inserted to solve that difficulty. The union did not embrace the night watchman. He was not eligible. He could hold his position as night watchman without joining the union. He desired to work in the mill. That would require him to join the union. The question was raised as to whether his service as a night watchman should be considered in determining his seniority rating. The defendant association insisted that the seniority rating under the contract was determined by the date of entering the employer's service as a millworker and not in any other

capacity. The employer acquiesced in this construction in its treatment of the plaintiff.

(1) Now considering the circumstance that this contract was with the millworkers, it seems clear the association was right in its contention, and that the correct construction is that the seniority rating was to be based on the time when the employee last entered the service as a millworker. The trial court construed this contract to provide for a rating based on the date the employee last entered the service, no matter in what capacity, and so instructed the jury. In this, we think, error intervened.

(2) However, the plaintiff alleged that the defendant association entered into an express contract with him to give him a seniority rating based on the time he started work as a night watchman and agreed to adhere to that rating in his employment, discontinuance and resumption of service. Assuming the employer agreed to it, there seems no legal objection to the enforcement of such a contract.

To prove such a contract, the plaintiff testified to conversations he had with members of the "shop committee" and the "organizer" prior to joining the union, in which they assured him that his seniority rating would be based on the time he entered the employ as a watchman. After these conversations and before he became a member of the union, he transferred from watchman to millworker. It seems that this was in accordance with the rules of the union, which gave the employer a trial period in which to test the suitability of the employee. Then, at a meeting about two months after this transfer, when the final act of making him a member was performed, he was told that his rating would be based on the time when he started to work in the mill. This was by action of the association in a regular meeting of the members.

The trial court submitted to the jury the issue of the

authority of those with whom the plaintiff conversed to bind the union, on the theory that there existed in the evidence facts and circumstances from which it might be inferred that they had authority. The charge was a correct statement of the law on the subject of apparent authority, but we fail to find in the record any evidence justifying the drawing of an inference of authority.

On the subject of apparent authority of an agent, it is stated in 2 American Jurisprudence, 85, Section 103: "Nor can he enlarge his powers by unauthorized representations and promises. * * * Moreover, the apparent authority for which the principal may be liable must be traceable to him, and cannot be established solely by the acts and conduct of the agent; the principal is only liable for that appearance of authority caused by himself." See, also, 1 Ohio Jurisprudence, 682, Section 37; *Bradford Belting Co.* v. *Gibson,* 68 Ohio St., 442, 67 N. E., 888.

There is no evidence of the actual authority of the "shop committee" or the "organizer," and no evidence that either had on any prior occasion either bound or attempted to bind the membership by any agreement relating to any new member. Indeed, this is the first instance of the admission of a member other than the original members. There could, therefore, be no apparent authority based on holding out, acquiescence or ratification of prior dealing with new members. This was the first attempt by these officers to represent the association in such a situation and the membership immediately repudiated the attempt. There is no evidence of actual authority and none that such an authority is customarily attached to such positions.

We, therefore, hold that there was a failure of proof that those who are said to have assumed to bind the union had either actual or apparent authority to so do.

(3) Recognizing that the rule applied in *McClees* v.

*Grand International Brotherhood of Locomotive Engineers,* 59 Ohio App., 477, 18 N. E. (2d), 812, prevents a member of an unincorporated association from maintaining an action against the entire membership, much evidence was adduced to prove that the plaintiff was not a member at the time he had his conversation with the named officers and at the time he instituted the action. This evidence was immaterial. The gravamen of that case was that if the officers had authority they represented all the members including the plaintiff at the time the liability would have been incurred. Such liability would attach to the plaintiff as well as other members, which would result in a legal incongruity. Now the negotiations between the plaintiff and the officers were not intended to have any binding effect unless and until the plaintiff joined the union, and at that time the officers represented him as well as the others.

The liability attached to all who were members at that time. The withdrawal of a member did not terminate his liability. Joining the union thereafter did not, *ipso facto,* impose that liability upon the new member.

We are therefore of the opinion that *McClees* v. *Grand International Brotherhood, supra,* is applicable and precludes a recovery in this case.

The court erred in overruling the motions for judgment.

For these reasons, the judgment is reversed and final judgment entered for the defendant.

*Judgment reversed.*

HAMILTON, P. J., and ROSS, J., concur.