CHESTER MARCHITTO, PLAINTIFF-APPELLANT, v. THE CENTRAL RAILROAD COMPANY OF NEW JERSEY, A CORPORATION, BROTHERHOOD OF RAILROAD TRAINMEN, AND DENNIS A. GILES, DEFENDANTS-RESPONDENTS.

Argued February 25, 1952—Decided May 19, 1952.

458

*Mr. Archie Elkins* argued the cause for the appellant.

*Mr. Herbert Ziff* argued the cause for the respondents (*Messrs. Carey, Pforr, Knoeppel and Ziff*, attorneys).

The opinion of the court was delivered by
VANDERBILT, C. J. This action was instituted by the plaintiff against the Central Railroad Company of New Jersey by which he is employed as a switchtender, The Brotherhood of Railroad Trainmen of which he is a member in good standing, and Dennis A. Giles, the chairman of the general grievance committee of the Brotherhood. The action arose

out of claims for extra wages and seniority rights made by the plaintiff against the railroad and the failure of the brotherhood and Giles to prosecute the claims, some of which are now over 13 years old.

The plaintiff's complaint contains six counts. In the first count it is alleged that under the terms of a collective bargaining agreement entered into between the railroad and the brotherhood the plaintiff as an employee of the railroad and a member of the brotherhood, was entitled to certain extra wages in the amount of $35,000 for services performed from April 14, 1938 to January 4, 1950, which the Railroad refused to pay. Judgment against the railroad in the sum of $35,000, together with interest, is demanded. The second count states that the railroad failed to recognize certain seniority rights alleged to have been assured him by the collective bargaining agreement as the consequence of which the plaintiff was laid off from January 5, 1950, to November 23, 1950. Claim is made against the railroad for the loss of $5,000 in earnings, together with interest. The third count charges that by reason of his membership the brotherhood undertook to prosecute his claim against the railroad for wages due him under the collective bargaining agreement but that it willfully neglected and failed to do so diligently and properly, thereby breaching its duty of trust to him, as the result of which his claim against the railroad has been jeopardized and may be lost. Damages are demanded against the brotherhood in the sum of $35,000, together with interest. In the fourth count the plaintiff alleges that Giles had the duty as the agent of the brotherhood and representative of the plaintiff to prosecute the plaintiff's claim for extra wages but that he negligently, willfully and fraudulently failed to do so, thereby violating his duty to the plaintiff. Damages against Giles in the sum of $35,000, together with interest, are demanded. In the fifth count the plaintiff seeks judgment in the sum of $5,000, together with interest, against both the brotherhood and Giles on the ground that they caused him to be deprived of the seniority rights to which he was entitled under the

collective bargaining agreement as the result of which he suffered a loss of earnings. The sixth count charges that the railroad, the brotherhood and Giles, acting jointly and severally, deprived him of the extra wages and seniority rights to which he is entitled and demand is made for judgment against them, both jointly and severally, in the sum of $40,000, together with interest.

The complaint as against the railroad was ordered stricken by the trial court on the grounds that the National Railroad Adjustment Board created by the Railway Labor Act, 45 U. S. C., § 151 et seq., was vested with exclusive jurisdiction over disputes between an employee and a carrier "growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions." On a separate appeal this order of the trial court was affirmed by the Appellate Division of the Superior Court, Marchitto v. Central R. Co. of N. J., 18 N. J. Super. 163 (1952), certification denied, May 19, 1952.

The brotherhood and Giles both moved to strike the complaint as to them on the grounds (1) that the court lacked jurisdiction over the subject matter, the same being vested exclusively in the National Railroad Adjustment Board; (2) that the complaint failed to state a cause of action; and (3) that the plaintiff had failed to exhaust his administrative remedies as provided by the constitution of the brotherhood. In the alternative they requested that the court hold the complaint as to them in abeyance pending the determination of the plaintiff's appeal from the order striking the complaint as to the railroad. Following the submission of sharply conflicting affidavits the trial court granted the defendants' motion and struck the balance of the complaint, stating that:

"* * * This action against the defendants Brotherhood of Railroad Trainmen and Dennis A. Giles is prematurely brought. Until the National Railroad Adjustment Board hears the matter involving the violation of the rights of the plaintiff by the Central Railroad of New Jersey, and renders its decision, the plaintiff cannot be said to have sustained any loss chargeable to the defendants Brotherhood of Railroad Trainmen and Dennis A. Giles."

The judgment of dismissal, however, provided in addition that the action was being dismissed as against these defendants "for lack of jurisdiction over the subject matter." From this judgment the plaintiff appealed to the Appellate Division of the Superior Court and while there pending, we certified the appeal here on our own motion.

An appellate court is necessarily concerned with the propriety of the action appealed from rather than with the reasons advanced by the court below in support thereof, *Procacci v. U. S. Fire Insurance Co.,* 118 *N. J. L.* 423, 427 (*E. & A.* 1937); *National Surety Co. v. Clement,* 133 *N. J. L.* 22 (*E. & A.* 1945); *Hughes v. Eisner,* 8 *N. J.* 228 (1951). Accordingly, on this appeal we must consider whether any of the grounds advanced by the defendants in support of their motion justified the trial court's judgment of dismissal.

(1) Did the trial court have jurisdiction over the subject matter? It is to be observed preliminarily that we are not here concerned with whether or not the trial court had jurisdiction to entertain the plaintiff's claim against the railroad, that issue having been decided adversely to him in *Marchitto v. Central R. Co. of N. J., supra,* 18 *N. J. Super.* 163 (*App. Div.* 1952); certification denied, May 19, 1952, but solely with the question of the trial court's jurisdiction over the plaintiff's claims against the brotherhood and Giles. There is nothing in the Railway Labor Act, 45 *U. S. C.,* § 151, *et seq.,* which even suggests that the National Railroad Adjustment Board was to have jurisdiction over disputes other than those "between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions," 45 *U. S. C.,* § 153 (*i*). The plaintiff's claim against these defendants is obviously not against a carrier, although it most certainly is one growing out of an agreement of the type adverted to in the act. Is this fact alone sufficient, as the defendants contend, to vest the National Railroad Adjustment Board

with jurisdiction to the exclusion of the courts of this State? Clearly it is not. In *Moore v. Illinois C. R. Co.*, 312 *U. S.* 630, 61 *S. Ct.* 754, 85 *L. Ed.* 1089 (1941), the United States Supreme Court held that the act did not take away from the courts the jurisdiction to determine an action to recover damages against a carrier by reason of its wrongful discharge of an employee even though the determination of the action required a construction of a collective bargaining agreement. More recently in *Slocum v. Delaware, L. & W. R. Co.*, 339 *U. S.* 239, 70 *S. Ct.* 577, 94 *L. Ed.* 795 (1950), the United States Supreme Court decided that the National Railroad Adjustment Board did have exclusive jurisdiction over claims for back wages made by a union on behalf of its members against a carrier which involved the interpretation of a collective bargaining agreement, but in so doing it specifically stated:

"Our holding here is not inconsistent with our holding in *Moore v. Illinois Cent. R. Co.*, 312 *U. S.* 630, 85 *L. Ed.* 1089, 61 *S. Ct.* 754. Moore was discharged by the railroad. He could have challenged the validity of his discharge before the Board, seeking reinstatement and back pay. Instead he chose to accept the railroad's action in discharging him as final, thereby ceasing to be an employee, and brought suit claiming damages for breach of contract. As we there held, the Railway Labor Act does not bar courts from adjudicating such cases. A common-law or statutory action for wrongful discharge differs from any remedy which the Board has power to provide, and does not involve questions of future relations between the railroad and its other employees. If a court in handling such a case must consider some provision of a collective-bargaining agreement, its interpretation would of course have no binding effect on future interpretations by the Board." (339 *U. S.*, at 244, 70 *S. Ct.*, at *page* 94 *L. Ed.*, at 800.)

The defendants cite in support of their contention the case of *Piscitelli v. Penna.-Reading S. S. Lines,* 11 *N. J. Super.* 46 (*App. Div.* 1950), but it is not in conflict with our conclusions here. In that case a discharged employee of the railroad sought reinstatement with back pay and a restoration of seniority rights and accordingly it was held that the trial court was without jurisdiction. It is to be noted,

moreover, that since the plaintiff there also sought damages against the railroad for illegal discharge, the Appellate Division gave him leave to amend his complaint so that it set forth his choice to accept the railroad's action in discharging him as final.

The defendants also argue that since the National Railroad Adjustment Board has never determined that the plaintiff had any rights against the railroad which have been lost, he has no basis for any recovery against them. To accept this argument, which incidentally does not go to the question of jurisdiction, would be in effect to grant these defendants immunity from liability, for there is no assurance whatever that the plaintiff's claim against the railroad will ever be presented to or determined by the National Railroad Adjustment Board. The defendants by a continuation of the wrongful conduct with which the plaintiff here charges them could effectively prevent such an administrative determination, and while theoretically the plaintiff might have the right individually to present his claim directly to the board, see 45 U. S. C. § 153(i); *Elgin, Joliet & Eastern R. Co. v. Burley*, 325 U. S. 711, 65 S. Ct. 1282, 89 L. Ed. 1886 (1945), as a practical matter it appears that such a procedure would be futile, for the board has consistently deadlocked on the question of whether it will take cognizance of a claim presented by an individual with the result that no awards on such claims are made, *Monograph of the Attorney General's Committee on Administrative Procedure, Part 4, Railway Labor, p. 7, S. Doc. No. 10, 77th Cong. 1st Sess.* (1941). It is significant, moreover, that in *Steele v. Louisville & Nashville R. R. Co.*, 323 U. S. 192, 65 S. Ct. 226, 89 L. Ed. 173 (1944), the United States Supreme Court specifically recognized that for breach of a union's duty as a bargaining agent resort may be had "to the usual judicial remedies of injunction and award of damages when appropriate for a breach of that duty."

We have no hesitation, therefore, in holding that the trial court had jurisdiction to entertain the plaintiff's com-

plaint as against these defendants charging them with negligence and breach of trust as his agent for the prosecution of his claims against the railroad.

■■ (2) Did the complaint state a cause of action against these defendants? It is universally recognized that an agent stands in a fiduciary relationship to his principal and is under a duty to be careful, skillful, diligent and loyal in the performance of his principal's business and that for a failure so to act he subjects himself to liability to his principal, 2 *Am. Jur., Agency,* §§ 251, 252, 274; 3 *C. J. S. Agency,* §§ 138, 155, 162, 172, 286; 2 *Restatement, Agency,* §§ 379, 387, 399. Since the complaint here charged these defendants with negligence, carelessness, fraud and breach of trust and made appropriate allegations of fact in support thereof, it necessarily follows that a good cause of action was pleaded, if these defendants were in fact and in law his agents.

■■ The brotherhood is an unincorporated fraternal association and the plaintiff is admittedly a member thereof in good standing. It is not a separate legal entity in the eyes of the law, having no existence apart from that of its individual members. At common law it could neither sue nor be sued, *Weller v. United Garment Workers of America,* 40 *N. J. L. J.* 91 (*Cir. Ct.* 1916). By statute suits by and against it in the association name have been authorized, *R. S.* 2:78–1 (now *N. J. S.* 2A:64–1), but such statutory authorization has not changed the substantive nature of its rights and obligations; indeed, *R. S.* 2:78–5 (now *N. J. S.* 2A:64–5) specifically provides that this legislation shall not "be so construed as to give any such organization or association any of the powers or to impose any of the liabilities of a corporation, except as herein set forth." In legal effect the plaintiff and every other member of the brotherhood are co-principals joined together in a joint enterprise to accomplish a common purpose with their relationships to each other and to the group being governed by the association's constitution and the by-laws or rules adopted pursuant thereto, and by the common law. As a member of the group

the plaintiff is jointly responsible with all other members for the actions of the group itself, and accordingly as a principal he has no cause of action against his co-principals for the wrongful conduct of their common agent.

The precise point here involved does not appear to have been previously passed upon by the courts of this State, but it has been the subject of decision in the courts of several other jurisdictions and they unanimously support our con- clusion that the plaintiff here has no cause of action against the brotherhood. In *McClees v. Grand International Brotherhood of Locomotive Engineers*, 59 *Ohio App*. 477, 18 *N. E.* 2*d* 812 (*Ohio Ct. App.* 1938), the plaintiff sought to recover damages from the defendant brotherhood of which he was a member for an alleged dereliction of duty on the part of certain of its officers in preserving his seniority rights. The facts of that case so closely resemble those in the instant case that the decision of the Ohio court is of particular interest and we therefore quote from its opinion at some length: (*p.* 815)

"There may be cases where a member sues for a breach of duty due him not as a member but as an ordinary individual, but in the instant case the breach of duty assigned was the failure or refusal of the international group organization to preserve and secure his seniority rights as an engineer upon a railroad, of which he had for some time been an employee. It was his very membership in the organization upon which he predicates his right to the service of the body. It was the failure of the proper officers of the group to perform their duties which he assigns as an actionable dereliction of duty. The plaintiff in the instant case sued as a member, not as an individual. If the defendant includes 400,000 members and the plaintiff is suing the organization as such, he is suing all of the 400,000 members. If he excludes himself and is suing only 399,999, then he is not suing the complete organization as such and his right to maintain a group suit fails, and he must sue the members individually.

It is only because the 400,000 constitute an organization functioning under a selected name, that by necessity he is permitted to sue the body of members. But he is just as much a member as any other individual in the organization. He is needed to complete the whole. When he excludes himself, as he must do if he would not sue himself, he destroys the organization he is seeking to hold responsible, since there is in fact no legal entity separate from the group.

The complaint seeks to hold the membership liable for the dereliction of certain officers of the organization, who, of course, were agents for the entire body. It appears from a review of the evidence that these officers were overruled by the membership in open meeting. Still the plaintiff seeks to hold the membership, the entire membership, for damages because of the dereliction of duty of such agents, who, it is also very plain, were his own agents just as much as the agents of the other 399,999 members of the defendant. Certainly, a principal may sue an agent for dereliction of duty, but, certainly, he may not sue his co-principals for a dereliction in duty of their common agent."

In *Hromek v. Gemeinde,* 238 *Wis.* 204, 298 *N. W.* 587 (*Wisc. Sup. Ct.* 1941), the plaintiff sought to sue a union of which she was a member for damages as the result of injuries sustained by the alleged negligence of the union and its representatives. In holding that the plaintiff had no cause of action against the union, an unincorporated association, the Wisconsin court stated: (*p.* 589)

"So far as defendant union is concerned, we are of the view that the judgment was erroneous. The interpleaded union is an unincorporated association having a membership of five thousand. It has no entity or existence apart from that of its members, although for convenience it is permitted that the group comprising the union be sued in the name adopted by the association. This is a procedural provision and does not in any way change the status of the group or its substantive liabilities. * * * It is the well-established law that while a principal may sue an agent for dereliction of duty, he may not sue his co-principals for the dereliction of their common agent. The right to do the latter would have to be sustained before any cause of action could be found in the plaintiff. * * *"

So too in *DeVillars, et al. v. Hessler,* 363 *Pa.* 498, 70 *A.* 2*d* 333, 14 *A. L. R.* 2*d* 470 (*Pa. Sup. Ct.* 1950), it was held that the plaintiff did not have a cause of action against an unincorporated association of which she was a member for injuries sustained as the result of the explosion of a defective steam table negligently installed by other members of the association at its fair ground concession, the court saying: (*p.* 335)

"The real question in the case therefore resolves itself into whether this action can be maintained against the association on the ground

that the members who allegedly committed the tort were acting on its behalf and for its benefit. * * * Since, therefore, the negligence of which she complains is legally imputed to herself, she cannot recover from the association or from any of its members, other than, as already stated, the individuals who actually committed the tort which caused her injuries."

For other cases to similar effect, see *Roschmann v. Sanborn,* 315 *Pa.* 188, 172 *A.* 657 (*Pa. Sup. Ct.* 1934); *Koogler v. Koogler,* 127 *Ohio St.* 57, 186 *N. E.* 725 (*Ohio Ct. App.* 1933); *Storms v. United Grain and Millworkers Union,* 64 *Ohio App.* 19, 27 *N. E.* 2d 781 (*Ohio Ct. App.* 1940); *Annotation,* 14 *A. L. R.* 2d 473.

In view of these authorities it is clear that the plaintiff's complaint in the present action failed to state a cause of action against the defendant brotherhood and that, therefore, the complaint was properly stricken as to it. The same does not hold true, however, for the defendant Giles. As chairman of the brotherhood's general grievance committee he was charged with the duty of prosecuting the claims and grievances of its members against the railroad. As agent of the brotherhood for that purpose he automatically was the agent of each if its members, including the plaintiff. The complaint sufficiently alleges that he breached his duties as an agent and, accordingly, under well settled rules of law if the facts as alleged are proven he is liable to the plaintiff as his principal for any loss sustained as a result of the breach. Indeed, the brief of the defendants presents no argument to the contrary, other than one directed to the facts which quite obviously is inappropriate at this stage of the proceedings.

(3) Is the plaintiff's action premature by virtue of his having failed to exhaust the administrative remedies provided by the constitution of the brotherhood? The constitution and rules promulgated pursuant thereto of an unincorporated association such as the defendant brotherhood are binding on its members, *Harker v. McKissock,* 7 *N. J.* 323 (1951), and it is the settled rule that the courts will not

interfere with the internal affairs of such an association unless the complaining member has exhausted such remedies as are provided him by the laws of the association itself, *Franklin v. Penna.-Reading Seashore Lines*, 122 *N. J. Eq.* 205 (*Ch.* 1937); *Grand Lodge, Brotherhood of Railroad Trainmen v. Nolan*, 196 *Ky.* 296, 244 *S. W.* 759 (*Ky. Ct. App.* 1922); 25 *R. C. L.* 59. The defendants point to various provisions of the constitution of the brotherhood which permit a member to take an appeal to the brotherhood's board of appeals within 90 days from "any adverse action" or "decision" of a sub-general grievance committee or the general grievance committee and contend that the plaintiff has failed to take such an appeal. But the defendants are patently not convinced by their own argument for it is stated in their brief: "The truth of the matter is that there has been no adverse action from which the plaintiff could have appealed. * * *" Their point that an action in the courts does not lie because of the plaintiff's failure to exhaust his administrative remedies within the brotherhood could not have been more effectively disposed of, for the constitution and rules of the brotherhood make no provision for a member appealing within the organization in the absence of any action being taken. The very essence of the plaintiff's complaint is that the defendants have failed to take action on his claims against the railroad. By this very failure to act he has been denied a determination of his claim by the National Railroad Adjustment Board, the determination of his claim by the general grievance committee and an appeal to the board of appeals. Obviously, this failure of the defendants to act cannot also operate to preclude the plaintiff from seeking relief in the courts. For the courts to withhold the exercise of their jurisdiction and to place the plaintiff again at the mercy of the defendants would be but to aggravate the very situation about which the plaintiff complains and could only result in further delaying the determination of his claims against the railroad which he first presented to the brotherhood for prosecution over 13 years ago.

The judgment appealed from is affirmed as to the defendant brotherhood, but is reversed as to the defendant Giles and the cause is remanded for trial.

*For affirmance as to the defendant Brotherhood of Railroad Trainmen and reversal as to the defendant Giles*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT and WACHENFELD—4.

*For affirmance as to the defendant Brotherhood of Railroad Trainmen, reversal as to the defendant Giles and for remand with direction that the cause be retained but further proceedings therein be stayed at the trial level pending the final outcome of the plaintiff's proceeding against the Central Railroad Company of New Jersey before the National Railroad Adjustment Board*—Justice BURLING—1.