ILLINOIS CENTRAL RAILROAD COMPANY *v.* BOLTON

No. 41645 January 30, 1961 126 So. 2d 524

*Byrd, Wise & Smith,* Jackson; *J. H. Wright, John W. Freels,* Chicago, Ill., for appellant.

*Kermit R. Cofer,* Water Valley, for appellee.

ARRINGTON, J.

On October 7, 1957, W. M. Bolton, appellee here, filed his bill of complaint in the Chancery Court of Yalobusha County, the county of his residence, against the Illinois Central Railroad Company, appellant here. He alleged that appellant's railroad ran through Yalobusha County and that for many years prior to March 29, 1953, appellee was employed as a machinist at its round house in Memphis, Tennessee, and that appellant had earned a high position of seniority on the seniority roster of appellant, in accordance with the terms and provisions of appellant's agreement with the System Federation No. 99, Railway Employees Department, the labor union to which appellee then belonged, and under which agreement, appellee was employed by and worked for appellant; that appellant laid off appellee from work because of insufficiency of work; that appellee notified appellant that his address would be Coffeeville, Mississippi, after he entered a "laid-off" status; and that appellant knew where appellee could be reached.

He then charged that under the union contract appellant had a contractual duty to call appellee back to work when the volume of work would require that he be called back, and that it was the duty of appellant not

to call someone to work who was lower on the seniority roster than appellee unless and until appellee had been called back to work on his job. The bill of complaint further alleged that in spite of its duty "under said agreement, and in spite of the fact that the increased volume of work necessitated someone in the job occupied by appellee on the date he was laid off," the appellant wholly failed to notify appellee to return to said job but employed another, or a succession of others, to occupy said job and to perform the work which had been performed by appellee prior to the lay-off, and which position, according to the union agreement, appellee was entitled to perform.

Appellee further alleged that when he discovered that another had been employed in his job, he made complaint to the appellant, who agreed to call appellee back to the job, but in fact hired another or others in his place. He charged that he had been ready, willing and able to return to his job at all times since March 29, 1953, the date of the lay-off. He charged that because of the breach of the agreement by appellant (calling someone lower on the seniority list rather than appellee), appellee had been deprived of his opportunity to work at said job and to earn wages which were paid to persons who occupied said job and drew wages therefor.

Appellee charged that he was entitled to a decree against appellant "for all sums paid to another, or others, in said job who had at the time he was laid off lower seniority than he had, or who had not then been employed and placed on said roster at the time complainant was so laid off." He contended that he had been damaged to such extent. The bill then demanded an accounting of all wages paid to others which he should have drawn and for a money decree for such amount.

The appellant filed a motion to dismiss the original bill on the ground that the Chancery Court was without jurisdiction to try the matters involved in the suit. In

this motion it was stated that the court had no jurisdiction because all matters raised by the bill of complaint were within the jurisdiction of the National Railroad Adjustment Board, established by the Railway Labor Act, Title 45, Section 151 et seq., U.S.C.A., and that the Adjustment Board provided for in the Act would have jurisdiction to try any claim that the plaintiff might have as shown by the original bill. This motion was overruled and the defendant answered, setting up in general a denial that it had not complied with the contract with reference to calling appellee back to work, and also attaching thereto the contract between appellant and the aforesaid Union to which appellee belonged and under which he worked.

The motion to dismiss was again renewed by appellant on the same grounds and again overruled.

The case went to trial on the merits and after a lengthy hearing, and after lengthy accounting procedures were performed by appellant under the order of the court, appellee was given a judgment against appellant for $24,-887.34, a sum which the lower court held represented the amount of wages unjustly withheld from appellee for the period April 1, 1953 to February 18, 1959, the day the hearing was completed in the lower court. From this judgment appellant prosecutes this appeal.

The principal controversy insofar as the facts here are concerned revolved around whether appellant railroad company was justified in removing appellee's name from its place on the seniority roster because appellee did not respond to a letter calling him back to work in September 1955. Two notices were sent by the railroad company to appellee calling him back to work when work was available after appellee's lay-off on March 29, 1953. The first notice was sent to the address on file with appellant. This was returned unclaimed. Another notice was sent to another address and this also was returned unclaimed. Appellee contended that he had left with an

employee of the railroad company notice that his address would be Coffeeville, Mississippi, after he was laid off on March 29, 1953. Appellee was never discharged by appellant, but his seniority was terminated because he failed to respond as already stated.

In 1956 appellee presented to appellant his grievance regarding the loss of his seniority, and such loss was verified by and concurred in by the ranking officer of appellee's union. Appellee did not make any claim under the provisions of the union agreement or the Railway Labor Act.

We have carefully reviewed this case in all its aspects, including detailed consideration of the facts, and while in our view we do not reach a discussion of the merits or find it necessary to state the facts in detail, in our judgment, the chancellor was manifestly wrong in finding that appellant did not comply with the union contract in reference to removing appellee's name from its place on the seniority roster.

Both parties have cited a large number of cases. We think it is unnecessary to discuss any of these cases except the two hereinafter mentioned.

Appellee relies on Moore v. Illinois Central Railroad Company, 312 U. S. 630, 61 S. Ct. 754, 85 L. Ed. 1089. In the first place, the *Moore* case, if not overruled, has been restricted and narrowed in its effect by a number of decisions which are discussed and cited in Illinois Central Railroad Company v. Nelson (Miss.), 57 So. 2d 321. We think the Nelson case is decisive of the question now before the Court. Appellee was not wrongfully discharged from his position as was the fact in the Moore case. Appellee bases his suit solely on the union contract and the loss of his seniority under that contract, and his suit is to recover the wages that have been paid others whom he claims occupied the position he should have occupied if appellant had properly applied the union contract as to seniority rights.

In the *Nelson* case, this Court found that Nelson sued the railroad on the ground that the railroad wrongfully withdrew him from the service and that he was wrongfully deprived of wages he would have earned because the railroad violated his seniority rights, and asked for a money judgment for such wages as he would have earned during the period in question. We see no substantial difference between the present case and the Nelson case. It was there held that the Railroad Adjustment Board had exclusive jurisdiction of Nelson's complaint. The basic question there was that for a period the railroad violated the employee's seniority rights. That is the same question here involved. It is common knowledge that the appellant in this case has thousands of employees and questions of seniority involve the rights of the union and its members other than appellee, and that the construction and interpretation of the rules and regulations of the company, the union, and the union contract are intricate matters affecting the present and future policy of the railroad company and the unions. Such matters, we held in the *Nelson* case, are within the exclusive jurisdiction of the Adjustment Board under the Railway Labor Act.

 █ It cannot be successfully argued that because about six years elapsed from the time of the alleged violation of appellee's seniority rights and the trial in the court below, that only the individual rights of appellee on the one hand and the railroad company on the other are involved in this case. Whatever grievances appellee had arose in September 1955 when his seniority rights became involved in the changing of the roster. Obviously at that time he could have made a complaint and followed the procedures set up on the union contract and provided by the Railway Labor Act. And it is perfectly clear that he could not have resorted to the courts but would have been limited to the remedies provided by the Railway Labor Act. Other employees would have then

been affected. He cannot divest the Adjustment Board of jurisdiction simply by waiting and filing suit as he has done in this case.

We think that the lower court had no jurisdiction under the *Nelson* case and the authorities cited therein, and, therefore, the case is reversed and judgment entered here dismissing the original bill for want of jurisdiction.

Reversed and judgment here dismissing bill.

*Hall, P.J.,* and *Ethridge, Gillespie* and *McElroy, JJ.,* concur.