Vester **MARTIN**

v.

**KANSAS CITY SOUTHERN RAILWAY COMPANY** and Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees.

Civ. A. No. 7763.

United States District Court
W. D. Louisiana,
Shreveport Division.

Aug. 17, 1961.

LeRoy Smallenberger, Smallenberger, Eatman, Tooke & Lynch, Shreveport, La., for plaintiff.

Arthur R. Carmody, Jr., Wilkinson, Lewis, Madison & Woods, Shreveport, La., Leonard L. Lockard, Booth, Lockard, Jack, Pleasant & LeSage, Shreveport, La., Mulholland, Robie & Hickey, Washington, D. C., for defendants.

BEN C. DAWKINS, Jr., Chief Judge.

This action is brought by a citizen of the State of Louisiana against The Kansas City Southern Railway Company, a Missouri corporation (Railroad), and the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees (Brotherhood),

an unincorporated association of individuals residing in the State of Louisiana and all other States of the Union. Plaintiff seeks to recover damages for his allegedly wrongful discharge by the Railroad in purported violation of a collective bargaining agreement and for failure on the part of Brotherhood to properly negotiate with the Railroad for an adjustment of his grievance. In his original complaint he sought damages, reinstatement and back pay. After hearing on a motion to dismiss by the Railroad, plaintiff was allowed to amend his complaint so as to non-suit the claim for reinstatement and back pay, leaving only the claim for damages outstanding.

Presently before the Court are the following defensive motions:

1. A plea of want of capacity of the defendant Brotherhood to stand in judgment in an action in tort for damages.

2. A joint motion for summary judgment on the pleadings for failure to state a claim upon which relief can be granted.

3. Motions to dismiss by the Railroad and Brotherhood for failure to state a claim upon which relief can be granted, lack of jurisdiction by this Court over the controversy, failure of plaintiff to exhaust his remedies within the Brotherhood, and other reasons hereinafter discussed.

 The first motion is clearly without merit, and it is overruled and denied. Arkansas Oak Flooring Co. v. United Mine Workers, 227 La. 1109, 81 So.2d 413; Godchaux Sugars, Inc. v. Chaisson et al., 227 La. 146, 78 So.2d 673; Hanson v. International Union of Operating Engineers, La.App., 79 So.2d 199; Teamsters Local Union, etc. v. Tasty Baking Co., La.App., 124 So.2d 355.

Plaintiff's allegations and argument are these:

On or about May 19, 1945, plaintiff became an employee of the defendant Railroad and, consequently, a member of the defendant Brotherhood, which was then acting as the exclusive collective bargaining agent for all employees similarly situated. Under the collective bargaining agreement then in force, all employees were placed in one of three working groups and plaintiff was designated a member of "Group Three," a category consisting primarily of laborers and nonclerical employees. In the month of April, 1956, the Railroad posted a notice relative to a relief job available in "Group Two." The proposal of the Railroad was to work an employee for three days per week as a laborer or "Group Three" employee and two days per week as a relief employee in "Group Two." Plaintiff contends that this combination of "Group Two" and "Group Three" employment was in violation of the collective bargaining agreement as known by the representatives of the Brotherhood who advised him to that effect. Moreover, plaintiff was informed by the Brotherhood representative that when a worker is employed in relief work there is no assurance of continuation of employment. As a consequence of this, plaintiff did not bid on the relief work and another employee, Elmo J. King, who held less seniority than plaintiff, bid for and began working in the "Group Two" position although King was classified as a "Group Three" worker. On or about October 31, 1957, plaintiff's active employment with the Railroad was terminated due to unavailability of work and a force reduction. Plaintiff further alleges that notwithstanding his higher seniority as a "Group Three" employee over King, the latter was allowed to continue working as a "Group Three" employee for three days per week and plaintiff was denied employment. Believing this to have been done in violation of the grouping and seniority provisions of the collective bargaining agreement, plaintiff requested that Brotherhood commence negotiations with the Railroad in his behalf. Although Brotherhood complied with plaintiff's request, no progress was made due to the allegedly negligent manner in which the grievance was handled. Plaintiff was subsequently informed by the Brotherhood representative that although he believed the action taken by the Railroad was in violation of the collective bargaining agreement, he saw no reason

why "two men should starve." He contends that this action by Brotherhood, through its representative, was a violation of a duty owed plaintiff by Brotherhood as imposed by the Protective Laws of the union. These Laws, he asserts, require Brotherhood representatives to see that agreements are strictly enforced without violation by the carrier or by the employees. When grievances are not properly adjusted, there is a provision for striking against the employer. Notwithstanding the duty imposed upon Brotherhood by the Protective Laws, he claims it failed to properly negotiate with the Railroad in plaintiff's behalf and as a result plaintiff has been unable to obtain representation or negotiate directly with the Railroad because of Federal law. By virtue of the Protective Laws of the Brotherhood and the Railway Labor Act (45 U.S.C.A. § 151 et seq.), plaintiff contends he has an implied Federal right to have his claim properly negotiated and to be properly represented. Through the combined efforts of the Brotherhood and Railroad, he alleges, plaintiff has been denied employment and preference has been shown to other employees, all in violation of the terms of the collective bargaining agreement between the Railroad and Brotherhood. Plaintiff says he was informed on January 11, 1960, that his name had been removed from the seniority list as of January 1, 1960, and plaintiff has been informed that workers with less seniority than plaintiff have been employed by the Railroad, all of this being in violation of the agreement. Plaintiff claims he has sustained damages to date of approximately $9,600 and will sustain damages in the future of approximately $10,000.

Turning to plaintiff's assertion that this Court has jurisdiction over the claim against the defendant Railroad and that his claim is not within the exclusive jurisdiction of the National Railroad Adjustment Board under the Railway Labor Act, 45 U.S.C.A. § 151 et seq., it is noted that plaintiff's alleged cause of action is not of the type contemplated in Slocum v. Delaware, L. & W. Ry. Co., 1950, 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795, that is, an action based on a statute or the common law for damages for wrongful discharge in violation of a collective bargaining agreement. This action more closely resembles the situations in Hundley v. Illinois Central Railroad Co., 6 Cir., 1959, 272 F.2d 752, and Rose v. Great Northern Railway Co., 8 Cir., 1959, 268 F.2d 674, 675, where employees were simply reduced to inactive or furloughed status and were not *discharged* in the sense that all employer-employee relationships terminated by virtue of the actions complained of, and alleged to be in violation of a collective bargaining agreement.

In the affidavit of D. E. Farrar, Assistant to the President of The Kansas City Southern Railway Company, is found a statement that on October 31, 1957, plaintiff was still in possession of his employee status although he was temporarily laid off due to a force reduction within the company. This assertion is not denied by the pleadings or by any affidavits filed by plaintiff. It is clearly shown by the record that the dispute directly concerned seniority rights under the collective bargaining agreement and was not over a discharge of plaintiff by the Railroad. In plaintiff's brief in answer to motions filed by defendants, he states that it does not matter whether he was "discharged" or "furloughed," and contends that the only issue is whether the contract was violated and the extent of damages suffered. In this connection, we note that in Rose v. Great Northern Railway Co., supra, the plaintiff alleged in his complaint that he

"* * * entered the employ of the defendant on or about the 10th day of September, 1928, and thereafter worked in various capacities until March 3, 1954, at which time [he] was laid off by defendant in the reduction of forces. That thereafter [he] sought to continue his employment with the defendant railway company and to exercise his seniority rights accorded him by virtue of collective bargaining agree-

ments in force at that time and accrued under prior agreements [but] the plaintiff has been denied and refused his rights to employment and [he] has been wrongfully discharged."

In interpreting the meaning of these allegations, the Eighth Circuit stated:

"* * * He claimed under these allegations that although he was at the time of his lay off and had been for many years working as a 'boilermaker helper' following his promotion from his job as 'laborer' and had been carried as boiler-maker helper on all rosters, he still had seniority rights as 'laborer' which entitled him to have the railroad 'bump' a laborer with less seniority and let plaintiff take over the laborer's work. *By the allegation that he had been wrongfully discharged plaintiff did not mean to assert that while he was working as a laborer the company fired him from that job, but that the company's denial of his claim to have seniority rights as a 'laborer' and its refusal to bump some employed laborer, constituted an actionable 'discharge' of him from a laborer's job.* So far from claiming that he had been discharged in 1954 in the sense of a severance at that time of the existing master and servant relation between the railroad and himself, it was not until February 12, 1958, four years after the alleged discharge date that he wrote the company in order to obtain his retirement annuity: 'Please accept my resignation from the services of the Great Northern Railway Company, effective Nov. 5, 1957.' " (Emphasis supplied.)

On these findings the Court held:

"3. The refusal of the railroad to 'bump' some employee on its roster of laborers at plaintiff's instance and put plaintiff in his place *did not constitute a discharge* upon which plaintiff could maintain the action for damages for discharge." (Emphasis supplied.)

██ Plaintiff has cited no authority and this Court has found none to the effect that a furloughed or laid-off employee can maintain an action for damages against a railroad for breach of the collective bargaining agreement. Therefore, on the authority of the Hundley and Rose cases, supra, we must hold that we do not have jurisdiction over plaintiff's claim against the Railroad. See also Illinois Central Railroad Co. v. Bolton, Miss.1961, 126 So.2d 524. The exclusive jurisdiction for handling that type of dispute rests with the Railroad Adjustment Board.

██ Turning to plaintiff's claim against the Brotherhood, it is significant that, although the issue has been squarely raised, plaintiff fails to allege at any place, in his pleadings or affidavit, that he attempted to exercise and exhaust his internal administrative remedies within the Brotherhood as provided for in the Brotherhood's Constitution and Protective Laws or that such remedies would have been futile or unfair. As a matter of law, plaintiff must show that he exhausted such remedies or give reasons for not doing so in order to recover from the Brotherhood in an action for damages based on a breach of Brotherhood law. Fingar v. Seaboard Air Line R. Co., 5 Cir., 1960, 277 F.2d 698; Gainey v. Brotherhood of Railway and Steamship Clerks, 3 Cir., 1960, 275 F.2d 342; Grand Lodge, etc. v. Girard Lodge No. 100, 384 Pa. 248, 120 A.2d 523, certiorari denied 1956, 351 U.S. 985, 76 S.Ct. 1052, 100 L.Ed. 1498; Fagan v. Pennsylvania Railroad Co., D.C.M.D.Pa.1959, 173 F.Supp. 465; Dalton v. Plumbers and Steamfitters Local, 1960, 240 La. 246, 122 So.2d 88. It is elementary that provisions of a union's constitution and bylaws are binding upon union members to the extent that such provisions are reasonable and fair. International Association of Machinists v. Gonzales, 356 U.S. 617, 78 S.Ct. 923, 2 L.Ed.2d 1018; Fingar v. Seaboard Air Line R. Co., supra.

The Brotherhood Constitution, Article 5, Section 2(b), provides:

"(b) No officer, member or subordinate unit of this Brotherhood may resort to any Court of Law or Equity or other civil authority either as parties plaintiff or for the purpose of securing an opinion or decision in connection with any alleged grievance or wrong concerning any case in controversy arising within the organization or under its law, until such officer, member or subordinate unit first shall have exhausted all remedies by appeal or otherwise provided herein for the settlement and disposition of such alleged rights, grievances or wrongs."

The procedure for handling members' grievances, as outlined in the Brotherhood Protective Laws, is as follows:

"Handling Grievances—General Rules

"Section 10. (a) The term 'grievance' wherever it appears in these protective laws is not to be construed other than as a complaint by the member of the Brotherhood against the Transportation Company concerning application of the rules covering wages, working conditions or employment relations.

\* \* \* \* \* \*

"(d) Prima facie violations of working agreements by carriers may be handled by such representatives of said Protective Committees as shall be determined by the System, District or Terminal Board of Adjustment without formal grievance presented by members. It is the duty of such representatives to see that agreements are enforced without violation by the carrier or by the employes.

\* \* \* \* \* \*

"Local Committee

"Section 11. (a). Members having grievances must present same in writing, giving all known facts to the Chairman of the Local Protective Committee having jurisdiction in the territory. If in the opinion of the Committee the grievance requires immediate handling, such action may be taken without formal approval of the lodge. Otherwise, it shall be placed before the lodge at its next meeting by the Chairman or Secretary of the Committee for consideration and action. Should the grievance be sustained by a majority vote of the members present, it shall be referred back to the Committee for handling and adjustment with the proper officials of the Transportation Company.

"(b) Should the committee fail to secure a satisfactory adjustment, it shall refer the grievance to the Chairman of the Division Protective Committee, or on systems where no division protective committees have been established, to the Board of Adjustment, with a full and complete statement of facts and all papers pertaining thereto.

\* \* \* \* \* \*

"Boards of Adjustment

"Section 13. (a) It shall be the duty of Boards of Adjustment and the said Boards are hereby authorized to receive, consider and adjust grievances arising out of the application of such agreements or otherwise, by conference or other manner with representatives of transportation companies.

"(b) When matters set forth in these laws are under consideration and are pending with the transportation company or companies, Boards of Adjustment through their chairmen, may request the assignment of Grand Lodge Officers and representatives to assist the Board of Adjustment. Should Boards of Adjustment fail to effect satisfactory settlement in manner provided for in the foregoing, such disputes may be submitted, with the approval of the Grand President, to tribunals established by law or otherwise, or may be handled further in the manner provided in these laws.

"Section 14. (a) It shall be the duty of Boards of Adjustment, and the said Boards are hereby authorized, when acting in conformity with the Constitution and Protective Laws of the Brotherhood, and the by-laws of the Boards of Adjustment, to negotiate, maintain, revise, modify, adjust and interpret the agreements establishing and covering wages, working conditions and other employment relations in their respective jurisdictions."

The uncontradicted affidavit of Gordon C. Grayson, General Chairman of the Brotherhood, shows that the next immediate step in processing plaintiff's grievance was to the Board of Adjustment, then to the Grand President and finally to the Grand Executive Council. Plaintiff made no attempt to appeal from the actions of the General Chairman of the Brotherhood and there is no allegation in the pleadings that such an appeal would have been futile or unfair. Moreover, there is no allegation that plaintiff was or would have been met with any "hostile discrimination."

■ The procedure for adjusting a grievance, as provided for in the Brotherhood Constitution and Protective Laws, was not followed by plaintiff and, therefore, on authority of the Fingar, Gainey, Girard Lodge, Fagan and Dalton cases, supra, we must hold that plaintiff is precluded from bringing this action against the Brotherhood and that such action is premature.

■■ Further, it is well established that a member of an unincorporated association cannot maintain an action at law for damages against the association for the alleged wrongful misconduct of its agents, since he would be in effect suing himself and his co-principals for the illegal acts of their common agent. The allegations in plaintiff's complaint are substantially similar to those in Kordewick v. Brotherhood of Railroad Trainmen, 7 Cir., 1950, 181 F.2d 963, where it was held that members of an unincorporated association (labor union) were co-principals, and, as such, were jointly responsible for the acts of the agents of the brotherhood. The Court stated the rule to be "sound" as applied to ordinary situations where a union member is represented by union officials in negotiations with the employer. In Goins v. Missouri Pacific System Federation of Maintenance of Way Employee Union, 8 Cir., 1960, 272 F.2d 458, the Court applied this rule where a union member brought suit against the union for damages resulting from the alleged wrongful actions of a union agent in removing the plaintiff from an elective office within the union. There is respectable authority supporting this rule. See McClees v. Grand International Brotherhood of Locomotive Engineers, 1938, 59 Ohio App. 477, 18 N.E.2d 812; Storms v. United Grain & Millworkers' Union, 1940, 64 Ohio App. 19, 27 N.E.2d 781; Marchitto v. Central R. Co. of N. J. et al., 1952, 9 N.J. 456, 88 A.2d 851; Brotherhood of Railroad Trainmen v. Allen, Tex.Civ.App. 1950, 230 S.W.2d 325, certiorari denied 340 U.S. 934, 71 S.Ct. 501, 95 L.Ed. 674, rehearing denied 341 U.S. 906, 71 S.Ct. 611, 95 L.Ed. 1345; Atkinson v. Thompson, Tex.Civ.App.1958, 311 S.W.2d 250; Hromek v. Gemeinde, 1941, 238 Wis. 204, 298 N.W. 587. Moreover, this principle of joint responsibility has been applied in numerous cases involving unincorporated associations other than labor organizations. See De Villars v. Hessler, 1950, 363 Pa. 498, 70 A.2d 333, 14 A.L.R.2d 470; Koogler v. Koogler, 1933, 127 Ohio St. 57, 186 N.E. 725; Roschmann v. Sanborn, 1934, 315 Pa. 188, 172 A. 657; Gilbert v. Crystal Fountain Lodge, 1887, 80 Ga. 284, 4 S.E. 905 (involving action by partner for damages for slander against the partnership); Martin v. Northern Pacific Beneficial Ass'n, 1897, 68 Minn. 521, 71 N.W. 701.

Plaintiff cites several cases purportedly restricting the doctrine of joint responsibility among co-principals for the wrongful actions of their common agent. In each case cited, however, the Court either distinguished its holding on the ground that the action complained of was com-

mitted in the course of an undertaking strictly adverse to plaintiff's interest or the Court was not faced with the doctrine of joint responsibility among co-principals. Here plaintiff does not allege that Brotherhood's agents acted adversely to his interest. On the contrary, it is clear that they acted in his behalf.

In United Association of Journeymen and Apprentices, etc. v. Borden, Tex.1959, 328 S.W.2d 739, a union member brought suit against the union for damages for wrongfully depriving him of the right to work on a construction job. Plaintiff alleged that the agent and business manager of a local union had initially refused to accept plaintiff's clearance card. However, several days later, the agent accepted the card and cursed and abused plaintiff and stated that as long as he had power, he would, in his capacity as agent and business manager, see to it that plaintiff was never allowed to work on the construction project. The union allegedly ratified the actions of the agent and threatened to dismiss plaintiff from the union. The Texas Supreme Court distinguished the holding in Brotherhood of Railroad Trainmen v. Allen, supra, and theorized that the principal exception to the rule of joint responsibility among co-principals for the wrongful actions of their common agent is where *the course of the common agent's undertaking is strictly adverse to the interest of the complaining principal.* This distinction likewise was made in Bonsor v. Musicians' Union, (Eng., 1955 House of Lords), 3 W.L.R. 788, 3 All E.R. 518; Taxicab Drivers' Local Union No. 889 v. Pittman, Okl.1957, 322 P.2d 159; Fray v. Amalgamated Meat Cutters, 1960, 9 Wis.2d 631, 101 N.W.2d 782; Anderson v. Painters Local Union, Tex.1960, 338 S. W.2d 148.

Plaintiff asserts in his supplemental and amended complaint that "notwithstanding the fact that the defendant Brotherhood *attempted and began negotiations in Complainant's behalf,* no progress was made, due to the negligent manner in which the grievance was handled by the defendant Brotherhood."

(Emphasis added.) This allegation alone is sufficient to take plaintiff's case out of the exception to the rule that co-principals are jointly responsible for the wrongful actions of their common agent. In any event, the majority of Courts, including the Seventh and Eighth Circuits, supra, have not recognized the exception and it follows from what has been said before that plaintiff's action against the Brotherhood must be dismissed for failure to state a claim upon which relief can be granted.

For the reasons given, it appearing that there are no genuine issues of material fact, defendants' motions for summary judgment must be, and are hereby, granted.